INHABITANTS OF THE COUNTY OF WORCESTER *vs.* BARTHOLD
SCHLESINGER & others.

The inhabitants of a county cannot maintain an action of contract against a creditor, who
has had his debtor arrested on mesne process and kept in close confinement in the
county jail, for board furnished to the debtor by the jailer upon his claiming support
as a pauper, if the creditor, after a demand upon him by the jailer to pay for such board,
has not requested the county or the jailer to detain the debtor in prison, or to furnish
him with board, nor promised to pay for the debtor's support.

MERRICK, J.　This is an action of contract for the recovery
of charges for the board of Henry D. Stone as set forth in the
declaration.　On the 28th of April 1858 he was arrested on mesne
process in favor of other parties, and for want of bail was com-
mitted to the jail of the county of Worcester.　While he was
there held in custody, he was again arrested and committed on
a writ sued out against him by the defendants, and eight other
writs were at the same time in like manner served upon him.
He was again in the month of August following committed on
two processes for contempt issued by the court of insolvency.
He claimed support as a pauper on all these processes, under
and by force of which he continued to be confined in close
prison until the 10th of February 1860, when upon discovery
of material defects in all of them he was liberated and dis-
charged by judgment of court on writs of *habeas corpus*.　*Stone*
v. *Carter*, 13 Gray, 575.

But assuming that Stone was held in custody upon a valid
writ in favor of the defendants, we are of opinion that this
action cannot be maintained.　It is therefore unnecessary to
consider how far their liability might otherwise have been
affected by the several commitments on writs in favor of other
parties and upon the processes for contempt.

It is agreed that the defendants, neither before nor after a
demand had been made upon them by the jailer for payment
of the board of the debtor, requested the plaintiffs or the jailer
to detain him in prison, or to furnish him with board, or prom-
ised to pay for it, unless such request is implied by law from his

commitment, the support afforded him, and the demand of payment for his maintenance. This must depend upon the provisions of the statute by which the duties and liabilities of parties are in such cases prescribed and regulated.

No right of action is in terms conferred by any statute, either upon the jailer, or upon the inhabitants of the county within which the jail is situate, to recover of the plaintiffs in the suit upon which he is committed thereto on mesne process or execution. But by *St.* 1857, *c.* 141, § 25, it is provided that when any person confined in close prison on mesne process or execution shall claim support as a pauper, the jailer shall furnish his support, to be paid for by the creditor; and the creditor shall in such case, if required by the jailer, either advance from time to time the money necessary for the support of the prisoner or give the jailer security therefor; and if the creditor shall neglect so to do for twenty-four hours after demand, "the jailer may discharge the prisoner." By *St.* 1859, *c.* 249, § 4, all necessary supplies for the maintenance and support of persons confined in the several jails and houses of correction are to be procured and furnished at the expense of the counties in which they are respectively situate by the county commissioners.

From the provisions of these statutes, it appears that it is only when the debtor is confined in close prison and claims support as a pauper, that the creditor is to be called upon to do anything in relation to his board or support. Each of these contingencies depends upon the will and ability of the debtor, because he may secure to himself the benefit of the prison limits, or he may himself pay for the support afforded to him. Whether they have in fact occurred may be wholly unknown to the creditor. No means are provided for giving him notice of their occurrence, other than the implication resulting from a requirement upon him by the jailer to advance money or give security for the support of the debtor. When a requirement is thus made, he is left free to determine whether he will comply with it, and thereby secure the continued detention and imprisonment of the debtor, or submit to the legal consequences of his omission and neglect. In the latter case, "the jailer may discharge

the prisoner." It is manifest from the whole scope and purpose of the act, that it was intended by the use of this expression to declare that in such contingency he should do so — that it should be his duty immediately to release the prisoner from custody. The right of arresting and detaining the person of the debtor in prison is given to the creditor for his benefit, and as a legal means by which satisfaction of the judgment, which has been or may be recovered for the debt, may be enforced; but it is given upon prescribed conditions, and is to be exercised only so far as they are complied with. And therefore it is clearly the purpose and design of the act, that when the creditor fails upon demand to furnish means or give security for the support of his debtor, he should be at once released from confinement and set at liberty. Certainly it cannot be supposed that there was any intent to make the question of personal liberty dependent upon the discretion or election of the jailer; but, on the other hand, it may fairly be presumed to have been the will of the legislature in framing an act for the relief of debtors, and especially when, as in the statute above cited, § 1, the declared object of it is the abolition of imprisonment for debt, that an officer having a right to discharge a prisoner should not be allowed to detain him in confinement, but should forthwith release him from custody. It is no forced construction to interpret the word "may" in the statute as meaning "shall" — as importing a duty to be observed, and not a permission to exercise restraint at his pleasure. This signification often is, and ought always to be, assigned to that word when the obvious purpose and real intention of the law requires it. 1 Kent Com. (6th ed.) 467, note, and cases cited. It was certainly so understood on this same subject by the commissioners by whom the Revised Statutes were compiled; and undoubtedly also by the legislature when, in view of their annotation, this particular section was re-enacted. Report of Commissioners on Rev. Sts. *c.* 97, § 51, note. Rev. Sts. *c.* 90, §§ 113, 114; *c.* 97, §§ 48 – 50. *St.* 1821, *c.* 22.

It has been urged for the plaintiffs, that this action can be maintained to recover at least for the board of the prisoner dur-

ing the twenty four hours next succeeding the demand upon the defendants, because until the expiration of that time it was the duty of the jailer to detain and support him. But we think not. No such action is given, and indeed no provision is made in view of the occurrence of such a contingency. Probably in framing the statute it did not occur to the makers of the law that there was occasion for any. The inconsiderable expense which may occasionally be incurred in this way by a public officer in the performance of his duty must rather be regarded as incident to the administration of justice, and to be borne by the government under whose authority he acts.

*Judgment for the defendants.*

*D. Foster*, for the plaintiffs.

*T. L. Nelson*, for the defendants.